**IT IS ORDERED as set forth below:**

**Date: January 8, 2018**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| STEVEN JACK NERI and JULIE ANNE NERI, | CASE NO. 17-53022-BEM |
| Debtors. | CHAPTER 7 |
| MICHAEL PALLOTO and JOHN J. JEDLICKA, Plaintiffs, | |
| v. | ADVERSARY PROCEEDING NO. 17-5125-BEM |
| STEVEN JACK NERI and JULIE ANNE NERI, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR DEFAULT JUDGMENT**

**I.    Introduction**

This matter comes before the Court on Michael Palloto and John J. Jedlicka's ("Plaintiffs") Motion for Default Judgment [Doc. 11] (the "Motion"). Plaintiffs seek entry of

default judgment on claims under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 1328(a)(4) that a state court judgment against one of the two defendants, Steven Neri, is nondischargeable.

The Court grants the Motion in part and denies it in part. The Court grants the Motion only as to the portion of the state court judgment attributable to Plaintiffs' awards for fraud against Steven Neri. The Motion is denied in all other respects. The denial is without prejudice to Plaintiffs seeking entry of judgment by default or otherwise after amending their complaint to add factual allegations and exhibits sufficient to support entry of a judgment as to the remaining portions of the state court judgment.

## II.     Procedural Background

Plaintiffs initiated this adversary proceeding on May 17, 2017, by filing a Complaint to Determine Dischargeability of Debt [Doc. 1]. Plaintiffs filed an Amended Complaint to Determine Dischargeability of Debt [Doc. 4] on May 18, 2017 (the "Amended Complaint").

In the Amended Complaint, Plaintiffs seek a determination that amounts awarded to them in Civil Action No. 13A-04507-4, in the Superior Court of Gwinnett County, Georgia (the "Superior Court Action"), are nondischargeable under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 1328(a)(4).

Plaintiffs filed a Certificate of Service on May 18, 2017 [Doc. 5], certifying service of the Amended Complaint and summons on Debtors. Debtors failed to file a responsive pleading within the time prescribed by Federal Rule of Bankruptcy Procedure 7012(a). Plaintiffs filed an initial Motion for Default Judgment on July 27, 2017 [Doc. 6], which the Court denied on August 18, 2017, because the Clerk had not yet entered default [Doc. 7]. Plaintiffs requested entry of default on September 14, 2017 [Doc. 10], and the Clerk entered default the next day. On October 6, 2017, Plaintiffs filed the Motion for Default Judgment currently before the Court.

Debtors did not respond to the motion and have not otherwise appeared in this adversary proceeding.

**III.    Standard**

Default judgments are governed by Federal Rule of Civil Procedure 55(b), made applicable to adversary proceedings by Federal Rule Bankruptcy Procedure 7055. Whether to enter default judgment is within the discretion of the Court. *Hays v. Wellborn Forest Prods., Inc. (In re Spejcher)*, No. 06-6347, 2006 WL 6592065, at *1 (Bankr. N.D. Ga. Oct. 30, 2006) (Massey, J.) (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985)). To warrant entry of a default judgment, "[t]here must be a sufficient basis in the pleading for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When the defendant fails to answer, the plaintiff's well-pleaded factual allegations are deemed admitted. *Id*. Facts that are not well pleaded and conclusions of law are not deemed admitted. *Id.* Therefore, the Court must determine whether Plaintiffs' well-pleaded factual allegations are sufficient to justify entry of judgment. *See EFS Inc. v. Mercer (In re Mercer)*, No. 13-3031, 2013 WL 3367253, at *1 (Bankr. M.D. Ala. July 5, 2013). The Court has jurisdiction in this proceeding and authority to enter a final judgment pursuant to 28 U.S.C. § 157(b)(2)(I).

**IV.    Factual Allegations**

As a result of Debtors' default, the following allegations are deemed admitted.

- "Steven Neri conspired with another party to defraud Plaintiffs as part of an investment scheme." Amended Complaint ¶ 8.

- "As a result of Steven Neri's fraud, Plaintiffs filed suit against Steven Neri in the Superior Court of Gwinnett County, Georgia, Civil Action File Number, 13A-04507-4." Amended Complaint ¶ 9.

- "On February 25, 2016, the Court entered a judgment against Steven Jack Neri for the following amounts: a. Judgement for Michael Palloto ("Palloto") in the amount of $60,653.08 for fraud; b. Judgment for John J. Jedlicka in the amount of $37,500 for fraud; c.

3

Judgment for Michael Palloto for conversion; d. Judgment for Jedlicka in the amount of $20,000 for conversion; e. Judgment for Palloto in the amount of $12,737.16 for breach of contract; f. Judgment for Jedlicka for $7,875 for breach of contract; and g. Judgment for Palloto and Jedlicka for $100,000 in punitive damages." Amended Complaint ¶ 10.

- "On May 6, 2016, the Court entered an order awarding $67,430.51 in attorney's fees as part of the Verdict awarded on February 25, 2016." Amended Complaint ¶ 11.

The above reflect the entirety of the Amended Complaint's substantive allegations. The Amended Complaint does not describe the investment scheme or otherwise allege any of the facts underlying the Superior Court Action.

Attached as exhibits to the Amended Complaint are Exhibits A, B, C, D, and E. Exhibit A is the judgment entered in the Superior Court Action against Steven Neri (the "Judgment") as well as the jury verdict on which the Judgment is based (the "Verdict"). The Judgment and Verdict corroborate the allegations in the Amended Complaint's ¶ 10 of the amounts awarded and the causes of action on which each award was made.[1] Neither the Judgment nor the Verdict contain any explanation or findings of fact that shed light on the underlying allegations.[2]

As to the attorneys' fees award, the Judgment states, "The jury determined that an award of attorney's fees against Defendant Neri is proper in this case. Pursuant to the stipulation of the parties, the Plaintiffs may submit evidence in support of their attorney's fees claim to the Court within 30 days. Defendant Neri will be allowed 30 days after the filing of the Plaintiff's [sic] request to respond."

Exhibit B is an Order on Plaintiffs' Affidavit for Attorney Fees as to Defendant Stephen Jack Neri, entered May 6, 2016, stating, "The Court finds that Plaintiffs Palloto and Jedlicka

---

[1] The Judgment, however, contradicts the allegation at ¶ 10.c of the Amended Complaint that judgment was awarded to Palloto for conversion. The Judgment itself states, "Judgment in favor Defendant Neri [sic] on Plaintiff Palloto's claim for conversion."

[2] The Verdict's format is check-the-box-and-fill-in-the-blank, showing only who won on each claim and the amount of any damages. For the attorneys' fees claim, the Verdict states, "We the jury find that attorney's fees should or should not (circle one) be awarded in favor of the Plaintiffs and against this Defendant." The word "should" is circled.

4

have presented compelling evidence that the time billed in the underlying action was reasonable and necessary; The Court further finds that Plaintiffs Palloto and Jedlicka be awarded $67,430.51 in conjunction with the Verdict issued February 25, 2016 against Defendant Stephen Jack Neri."

Exhibits C, D, and E are three Writs of Fieri Facias issued by the Superior Court of Gwinnet County relating to the Judgment. Exhibit C is in the amount of $73,390.24 in favor of Palloto and against Steven Neri.[3] Exhibit D is in the amount of $65,375 in favor of Jedlicka and against Steven Neri.[4] Exhibit E is in the amount of $100,000 in favor of both Palloto and Jedlicka and against Steven Neri.

Plaintiffs seek a determination that the entire amount awarded to them is nondischargeable under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 1328(a)(4). As to this determination, Plaintiffs make no distinction between the Judgment's separate awards for separate claims. Plaintiffs request that the entire amount awarded in the Judgment be determined nondischargeable under each of § 523(a)(2), § 523(a)(4), and § 1328(a)(4).

## V.     Analysis

### A.     Collateral Estoppel

The Amended Complaint does not allege the details of any investment scheme or otherwise allege the facts underlying the Superior Court Action. Plaintiffs rely almost exclusively on the mere existence of the Judgment. The Court, therefore, can grant the Motion for Default Judgment only to the extent the Judgment establishes, as a matter of law, liability for nondischargeable obligations, thereby precluding relitigating in this proceeding issues pertaining to nondischargeability.

---

[3] Palloto's fraud judgment ($60,653.08) and contract judgment ($12,737.16) equal a total judgment of $73,390.24.
[4] Jedlicka's fraud judgment ($37,500), conversion judgment ($20,000), and contract judgment ($7,875) equal a total judgment of $65,375.

5

"Collateral estoppel principles apply to dischargeability proceedings." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (citing *Grogan v. Garner,* 498 U.S. 279, 285 n.11 (1991)). "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *Id.* at 675–76*. See also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

> The Supreme Court of Georgia has explained collateral estoppel as follows:
>
> Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Collateral estoppel requires identity of the parties and their privies in both actions. However, collateral estoppel does not require precise identity of the claim—so long as an issue was determined in the previous action and there is identity of the parties or their privies, that issue may not be re-litigated, even as part of a different claim. Collateral estoppel not only precludes those issues that actually were litigated and decided in the previous action, it also precludes issues that necessarily had to be decided in order for the previous judgment to have been rendered.

*In re T.M.G.*, 275 Ga. 543, 544, 570 S.E.2d 327, 329 (2002) (footnotes omitted).

Julie Neri is a defendant in this proceeding despite not being a defendant in the Superior Court Action, despite no apparent connection to the Superior Court Action, and despite the Amended Complaint alleging no debt owed by her or wrongdoing done by her. Default judgment is clearly inappropriate as to Julie Neri. Aside from Julie Neri, the parties in this proceeding are identical to the parties in the Superior Court Action: Palloto, Jedlicka, and Steven Neri are parties in this proceeding and were the parties in the Superior Court Action.[5]

---

[5] The Court notes that Debtors' Schedule D [Doc. 1, Case No. 17-53022] shows undisputed judgment lien debts owed by Steven Neri to both Plaintiffs, with the debts described as follows: "Judgment lien from Civil Case for Fraud, Conversion, and Breach of Contract."

6

The Judgment is preclusive in this proceeding, therefore, to the extent it establishes Steven Neri's liability for a nondischargeable debt. To determine whether the Judgment establishes liability for a nondischargeable debt, the Court must determine whether the issues adjudicated (or necessarily adjudicated) in the Superior Court Action are identical to issues that would need to be adjudicated in this proceeding.

### B.     The Issues Decided in the Superior Court Action

Because Plaintiffs have not alleged the basic facts on which their Superior Court claims were based, and because the Court cannot otherwise determine from Plaintiffs' exhibits the facts on which the Judgment and the Verdict were based, the only issues the Court can conclude were decided in the Superior Court Action are those that were necessarily decided as a matter of law. The Court identifies those issues below.

#### 1.     Steven Neri's Liability for Fraud

The Judgment awarded Palloto $60,653.08 for fraud and awarded Jedlicka $37,500 for fraud. "The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Wolf v. Middleton*, 305 Ga. App. 784, 788, 700 S.E.2d 598, 602 (2010). In the Superior Court Action, therefore, the following were necessarily decided: (1) Steven Neri made a false representation or omission of a material fact, (2) the representation or omission was made with scienter, (3) the representation or omission was made with the intent to induce Palloto and Jedlicka to act or refrain from acting, (4) Palloto and Jedlicka justifiably relied on the representation or omission, and (5) Palloto and Jedlicka suffered damages of (respectively) $60,653.08 and $37,500.

7

### 2. Steven Neri's Liability for Conversion

The Judgment awarded Jedlicka $20,000 for conversion. "The tort of conversion involves an unauthorized assumption and exercise of the right of ownership over property belonging to another, in hostility of her rights; an act of dominion over the personal property of another inconsistent with her rights; or an unauthorized appropriation. It is immaterial that the dominion was exercised in good faith or by accident." *Both v. Frantz*, 278 Ga. App. 556, 557, 629 S.E.2d 427, 430 (2006) (footnotes omitted) (citing *Page v. Braddy*, 255 Ga. App. 124, 126, 564 S.E.2d 538, 541 (2002)). The jury in the Superior Court Action necessarily decided one of the following: that Steven Neri assumed and exercised ownership over Jedlicka's property without authority; that Steven Neri committed an act of dominion over Jedlicka's property, inconsistent with Jedlicka's rights; or Steven Neri appropriated Jedlicka's property without authority. The jury also necessarily decided that Jedlicka suffered damages totaling $20,000 as a result of Steven Neri's conversion.

### 3. Steven Neri's Liability for Breach of Contract

The Judgment awarded Palloto $12,737.16 for breach of contract and awarded Jedlicka $7,875 for breach of contract. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Roberts v. JP Morgan Chase Bank, Nat'l Ass'n*, 342 Ga. App. 73, 76, 802 S.E.2d 880, 884 (2017) (quoting *Houghton v. Sacor Fin., Inc.*, 337 Ga. App. 254, 256, 786 S.E.2d 903, 905 (2016)). The jury necessarily decided Steven Neri breached a contract with Palloto, causing him damages of $12,737.16, and breached a contract with Jedlicka, causing him damages of $7,875.

8

### 4. Steven Neri's Liability for Punitive Damages.

The Judgment awarded $100,000 in punitive damages to Palloto and Jedlicka, jointly. "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b). The Verdict states as follows regarding punitive damages: "IF YOU FIND FOR THE PLAINTIFFS AS TO FRAUD AND/OR CONVERSION, YOU MAY CONSIDER WHETHER OR NOT YOU WANT TO AWARD PUNITIVE DAMAGES: We, the jury, find for the Plaintiffs and against Defendant Neri in the amount of $100,000.00 for punitive damages."

The jury necessarily decided that as to Steven Neri's fraud or conversion (or both), Steven Neri's conduct showed at least one of the following: willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

### 5. Steven Neri's Liability for Attorneys' Fees

Under the Judgment and the subsequent order on attorneys' fees, Palloto and Jedlicka were jointly awarded $67,430.51 in attorneys' fees. In Georgia, attorneys' fees may be awarded "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13–6–11.

The jury necessarily determined that as to both Palloto and Jedlicka, Steven Neri acted in bad faith, was stubbornly litigious, or caused unnecessary trouble and expense. The Superior Court determined in its attorneys' fees order that Palloto and Jedlicka were entitled to $67,430.51

9

in attorneys' fees on "compelling evidence that the time billed in the underlying action was reasonable and necessary."

### C. Whether Collateral Estoppel Applies to any Issues that Must Be Decided in this Proceeding

Below, the Court discusses whether any issues that must be decided in this proceeding were determined in the Superior Court Action. The Court will compare the elements that must be proved in actions under § 523(a)(2), § 523(a)(4), and § 1328(a)(4) to the elements that were necessarily proved in the Superior Court Action on Plaintiffs' claims for fraud, conversion, contract breach, punitive damages, and attorneys' fees.

#### 1. Fraud Under § 523(a)(2)

A Chapter 7 discharge does not discharge "any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The elements of a § 523(a)(2)(A) claim are the following: (1) the debtor made a false representation; (2) the false representation was intended to deceive a creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance on the false representation was justifiable; and (5) the creditor sustained damage as a result of the false representation. *E.g.*, *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998); *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996); *HSSM # 7 L.P. v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 892 (11th Cir. 1996).

"The elements of the Georgia tort of fraud are essentially the same as the elements of a Section 523(a)(2)(A) claim based on fraud." *Worldwide Equip. of S.C., Inc. v. Willoughby (In re Willoughby)*, No. 16-5164-WLH, 2017 WL 3741256, at *5 (Bankr. N.D. Ga. Aug. 30, 2017) (Hagenau, J.) (citing *Wilson Family Foods, Inc. v. Brown (In re Brown)*, 457 B.R. 919, 924 n.1

10

(Bankr. M.D. Ga. 2011)).[6] Moreover, the elements of a fraud claim under Georgia law and of a § 523(a)(2)(A) claim are routinely treated as sufficiently identical in the collateral estoppel context. *See, e.g.*, *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 924 (Bankr. N.D. Ga. 2010) (Hagenau, J.) ("The Court concludes the requirements for establishing 'a fraud claim under Georgia law [are] sufficiently identical to the elements require[d] for a showing of fraud pursuant to 11 U.S.C. § 523(a)(2)(A),' to find an identity of issues.") (brackets in original) (quoting *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 506 (Bankr. S.D. Ga. 2009)). In other words, "[p]roving fraud under Section 523(a)(2)(A) necessarily proves fraud under Georgia law, and vice versa." *In re Willoughby*, 2017 WL 3741256, at *5.

The adjudication of Steven Neri's liability for fraud necessarily adjudicated the same issues that render the liability nondischargeable under § 523(a)(2)(A). Those issues, therefore, cannot be relitigated in this proceeding. The portions of the Judgment attributable to Palloto's and Jedlicka's fraud claims are nondischargeable.

The same cannot be said of Steven Neri's liability for conversion and contract breach, neither of which share any elements with a claim under § 523(a)(2). The Court denies the Motion for Default Judgment under § 523(a)(2) as to Steven Neri's liability for conversion and contract breach.

### 2. Fraud or Defalcation While Acting in a Fiduciary Capacity Under § 523(a)(4)

A Chapter 7 discharge does not apply to "any debt … for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Plaintiffs' §

---

[6] *Compare In re Johannessen*, 76 F.3d at 350 (stating the elements of a § 523(a)(2)(A) claim), *with Nebo Ventures, LLC v. NovaPro Risk Sols., L.P.*, 324 Ga. App. 836, 838–39, 752 S.E.2d 18, 22 (2013) (stating the elements of fraud under Georgia law) (quoting *Lakeside Invs. Grp. v. Allen*, 253 Ga. App. 448, 450, 559 S.E.2d 491, 493 (2002)).

11

523(a)(4) claim is for fiduciary fraud or defalcation; Plaintiffs do not allege embezzlement or larceny. *See* Amended Complaint ¶¶ 17–21.

To establish a claim for fiduciary fraud or defalcation under § 523(a)(4), a creditor must show (1) the debtor held a fiduciary position as to the creditor under an express trust or under a technical trust, such as a statute that imposes trust-like duties; (2) the claim arose while the debtor was acting as a fiduciary; and (3) the claim is for fraud or defalcation. *See, e.g.*, *Quaif v. Johnson,* 4 F.3d 950, 953–55 (11th Cir. 1993); *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha),* 451 F.3d 813, 816–17 (11th Cir. 2006); *Cloninger v. Cloninger (In re Cloninger)*, 548 B.R. 839, 856 (Bankr. N.D. Ga. 2016) (Bonapfel, J.).

As discussed above, the only issues the Court can conclude were decided in the Superior Court Action are those issues necessarily decided as a matter of law—i.e., the elements of the claims on which Steven Neri was found liable. None of those elements include a fiduciary relationship or fiduciary duties.

As part of the Amended Complaint's formulaic recitation of a § 523(a)(4) cause of action, Plaintiffs allege, "Defendant had a fiduciary relationship with Plaintiffs that arose from his promise to invest money on behalf on Plaintiffs." Amended Complaint ¶ 18. This is a legal conclusion not entitled to the presumption of truth, rather than a well-pleaded factual allegation. But even if the Court accepted the statement as true, Plaintiffs would still not show entitlement to entry of default judgment under § 523(a)(4). Not all fiduciary relationships qualify under § 523(a)(4)—only those arising out of express or technical trusts.

### 3. Damages for Willful or Malicious Personal Injury Under § 1328(a)(4); Willful and Malicious Injury Under § 523(a)(6)

Plaintiffs assert a claim under § 1328(a)(4), which excepts from the Chapter 13 discharge "any debt … for restitution, or damages, awarded in a civil action against the debtor as a result of

12

willful or malicious injury by the debtor that cause personal injury to an individual or the death of an individual." Debtors filed a Chapter 13 petition on February 17, 2017, later converting the case to one under Chapter 7 on July 28, 2017. When this adversary proceeding was filed on May 17, 2017, and when the Amended Complaint was filed on May 18, 2017, the § 1328(a)(4) claim was properly asserted.

Plaintiffs, however, never amended their complaint to omit the § 1328(a)(4) claim. Plaintiffs' Motion for Default Judgment—filed October 6, 2017—seeks entry of a default judgment on the §1328(a)(4) claim despite the conversion to Chapter 7. The Court plainly cannot enter a default judgment on a claim arising from a statute that does not apply to Chapter 7 discharges.

Alternatively, Plaintiffs are clearly not entitled to a default judgment even under the analogous (and broader) exception to discharge found in § 523(a)(6), which excepts from the Chapter 7 discharge "any debt … for willful and malicious injury by the debtor." An injury is "willful" when the debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir. 1995)). *See also Tasker v. Sitton (In re Sitton)*, No. 14-5484-PWB, 2015 WL 1622032, at *1 (Bankr. N.D. Ga. Mar. 11, 2015) (Bonapfel, J.) ("Section 523(a)(6) requires that a debtor intend the injury, not just the act that causes the injury.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998)). An injury is "malicious" when the debtor's actions are "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Jennings*, 670 F.3d at 1334 (quoting *In re Walker*, 48 F.3d at 1164). An injury caused negligently or recklessly is insufficient under § 523(a)(6). *Kawaauhau*, 523 U.S. at 64.

Plaintiffs are not entitled to entry of default judgment under § 523(a)(6) for the conversion and breach of contract debts because § 523(a)(6) has an intent requirement, whereas conversion and breach of contract have no intent requirement. Without additional information about the claims, the mere fact that Plaintiffs hold a judgment for conversion and breach of contract is insufficient to render the associated debt nondischargeable as a matter of law under collateral estoppel. *E.g.*, *SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06-9096-MGD, 2008 WL 7842072, at *5 (Bankr. N.D. Ga. Mar. 27, 2008) (Diehl, J.) ("Conversion does not necessarily include section 523(a)(6)'s intent element, and without findings of fact, there is no basis to impute the requisite willful and malicious intent to injure from the prior judgment."); *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 928 (Bankr. N.D. Ga. 2010) (Hagenau, J.) ("Not every act of conversion will be sufficient to establish willful and malicious injury under § 523(a)(6).").

### 4. Punitive Damages

An award of punitive damages is not necessarily nondischargeable. "Georgia's punitive damages statute is … written in the disjunctive, allowing punitive damages to be awarded for any tort action showing 'willful misconduct, malice, fraud, wantonness, oppression, *or* the entire want of care that constitutes conscious indifference to the consequences.'" *Allen v. Morrow (In re Morrow)*, 508 B.R. 514, 522 (Bankr. N.D. Ga. 2014) (Massey, J.) (emphasis in original) (quoting O.C.G.A. § 51–12–5.1(b)). The punitive damages statute, while "contemplat[ing] an award of punitive damages for 'fraud,' … also permits punitive damages in circumstances that do not rise to that level that would render a debt nondischargeable." *Hit-Em-Hard Corp. v. Lewis (In re Lewis)*, No. 12-5577-PWB, 2016 WL 1426929, at *2 (Bankr. N.D. Ga. Apr. 11, 2016) (Bonapfel, J.). However, punitive damages attributable to a nondischargeable debt are

nondischargeable. *See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993) ("Section 523(a)(2)(A), therefore, excepts from discharge that part of a judgment for fraud consisting of punitive damages."). In the collateral estoppel context, "[i]f the judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *Id.* at 676.

The Verdict instructed the jury in the Superior Court Action that the jury could consider punitive damages if the jury found "for the plaintiffs as to fraud and/or conversion." The Court has already determined that while the judgments for fraud are preclusive under § 523(a)(2), the Court cannot conclude on the limited information currently before the Court that the judgment for conversion is preclusive under § 523(a)(6).

The Judgment contains awards to Jedlicka for both fraud and conversion. The jury could have awarded Jedlicka punitive damages based on fraud alone, conversion alone, or a combination of both. "[I]t is impossible to determine with certainty," *id.* at 676, that Jedlicka's punitive damage award is not solely attributable to the conversion judgment.

The Judgment contains an award to Palloto for fraud, but not for conversion. The jury could have only awarded Palloto punitive damages for fraud. The Court, however, will decline to enter a default judgment as to Palloto's portion of the punitive damages award without more information.

It is not clear how the punitive damage award is allocated under state law. The Judgment awards a single $100,000 in punitive damage award to both Palloto and Jedlicka, rather than separate $50,000 awards, or separate awards apportioned according to individual damages

15

suffered. Thus, the Court needs more information to determine how the punitive damage award should be apportioned.

### 5. Attorneys' Fees

"An award of attorney's fees in connection with a debt that is non-dischargeable is likewise non-dischargeable." *Flemm v. Trexler (In re Trexler)*, No. 14-5133-WLH, 2016 WL 236054, at *9 (Bankr. N.D. Ga. Jan. 11, 2016) (Hagenau, J.) (citing *Cohen v. De la Cruz*, 523 U.S. 213 (1998)). "When a judgment imposes both non-dischargeable and dischargeable liabilities, bankruptcy courts generally apportion the single fee award to the non-dischargeable and dischargeable components of the judgment, prorated accordingly." *Van Peteghem v. Kohler (In re Kohler)*, No. 13-2026-JRS, 2017 WL 1030724, at *31 (Bankr. N.D. Ga. Mar. 15, 2017) (Sacca, J.).

Some portion of the fee award is nondischargeable because Palloto's $60,653.08 fraud judgment and Jedlicka's $37,500 fraud judgment are nondischargeable. But because it is unclear what portion of the punitive damages award is nondischargeable, and because the Court needs more information to determine how the punitive damages award is allocated to Plaintiffs under state law, the Court has insufficient information to calculate the nondischargeable attorneys' fees. The Court, therefore, will not enter a default judgment as to an amount of nondischargeable attorneys' fees.

## VI. Conclusion

For the above reasons, the Court grants the Motion for Default Judgment under § 523(a)(2) as to Palloto's $60,653.08 fraud judgment against Steven Neri and as to Jedlicka's $37,500 fraud judgment against Steven Neri, and the Court denies the Motion for Default Judgment in all other respects. The denial is without prejudice to Plaintiffs seeking entry of a

judgment after amending their complaint to add factual allegations and exhibits sufficient to support entry of judgment as to the remaining portions of the Judgment.

The Court will allow Plaintiffs 30 days to file and serve an amended complaint. Should Plaintiffs not timely file and serve an amended complaint, the Court will deem Plaintiff's remaining claims abandoned and enter an appropriate order. Should Plaintiffs timely file and serve an amended complaint, Defendants will have 30 days after service of the amended complaint to file and serve an answer or other responsive pleading.

**END OF ORDER**

## Distribution List

Jon David W. Huffman
Poole Huffman, LLC
Suite 344
315 W. Ponce de Leon Avenue
Decatur, GA 30030

Michael Palloto
Poole Huffman, LLC
315 W. Ponce de Leon Ave.
Suite 344
Decatur, GA 30030

John J Jedlicka
Poole Huffman, LLC
315 W. Ponce de Leon Ave.
Suite 344
Decatur, GA 30030

Steven Jack Neri
115 Kimball Bridge Cove
Alpharetta, GA 30022

Julie Anne Neri
115 Kimball Bridge Cove
Alpharetta, GA 30022